Dore, J.
Plaintiffs, tenants or occupants of the office building, 512 Fifth Avenue, New York, N. Y., sued defendant Mutual Life Insurance Company, owner, and defendant Manufacturers Trust Company, as lessee, for a declaratory judgment to enjoin defendants from instituting proceedings to remove plaintiffs from the building and to determine the legal relations of the parties. The landlord brought summary dispossess proceedings in the Municipal Court against a number of the plaintiffs; such proceedings were consolidated with plaintiffs’ action in the Supreme Court and all were tried together.
The Business Rent Law (L. 1945, ch. 314, as amd. by L. 1946, ch. 273), so far as here relevant, provides that so long as a tenant continues to pay the rent to which the landlord is entitled under the' provisions of the act, he may not be removed from any business space unless (§ 8, subd. [c]) the landlord seeks in good faith to recover possession for the immediate purpose of demolishing the building with the intention of constructing a new building: “ and the plans for such construction have been approved by the proper authorities, if such approval is required by law.” In the case at bar plaintiffs are entitled to the benefits of the Business Rent Law as they have all duly tendered their rents and such tender is a continuing one. The issue presented at trial was whether the landlord had complied with the above provisions of the statute so as to be entitled to dispossess the tenants. After trial at Special Term, the court found that the landlord had in all respects complied with the statutory provisions, and accordingly dismissed plaintiffs ’ complaint, directed plaintiffs’ removal from the premises and awarded possession to Mutual as landlord. Plaintiffs appeal.
We think the trial court correctly found that defendant Mutual, as landlord, sought in good faith to recover possession of the property for the immediate purpose of demolishing the present building with the intention of constructing a new building. The lease with Manufacturers Trust Company is not under the *502 statute a legal .impediment preventing the landlord from proceeding with' demolition and erection of a new building. In such lease Mutual, as owner, obligates itself to pay the cost of demolition and construction to the extent of $1,000,000 and has full veto power over all contracts pertaining to the work. Once erected, the new building belongs to the owner-landlord, and the lessee covenants not to remove nor alter. We also find that plaintiffs failed to prove any fraud, estoppel, or improper curtailment of services. The trial court properly found that the plans for the proposed, bank building to be constructed after demolition of the present office building have been approved as required by the Department of Housing and Buildings of the City of New York.
The landlord, however, applied to the United States Civilian Production Administration for approval of its new construction project as required by an outstanding order of that Federal agency; such approval was denied in May, 1946, and no appeal was taken. Accordingly, of all the numerous points raised by appellants, we find that the sole issue surviving on appeal is whether this is a case in which approval of the plans by the Civilian Production Administration is “ required by law ” under section 8, subdivision (c), of the Business Rent Law {supra) before the landlord can legally recover possession. Keeping in mind the object and purpose of the statute and the conditions existing when it was adopted, w;e reach the conclusion on all the facts disclosed that such approval is required by law', and as it concededly was not secured-but on the contrary was expressly denied, the landlord failed to make out a cause for dispossess under the act. On this ground alone the judgment and final order should be reversed.
To effectuate the Veterans’ Emergency Housing Program, the Civilian Production Administration issued an order designed to divert “ critical materials from deferrable or "less essential construction. ’’ (General Restrictions on Construction, Part 4700, as amended August 27, 1946; 11 Federal Register 9515-9517.) So far as here relevant to the facts before us, the order forbids ‘ ‘ the beginning of construction and repair work on buildings and certain other structures ” (such as the proposed new bank building) without first obtaining specific authorization. The form of application required to be submitted by those seeking authorization to build prescribes that a description of the project with a “ plan ” or sketch showing the principal dimensions shall be annexed. Demolition, excavation and site preparation work are excluded from its operation. Violations of the order are punishable as a crime.
*503 Under section 344-a of the Civil Practice Act we may take judicial notice of such order as a “ rule or regulation of an executive department of the government of the United States, or a public board, agency or officer created by the law thereof.” (See U. S. Code, tit. 44, § 307; United States v. Lederer, 140 F. 2d 136, 139; United States v. Lutz, 142 F. 2d 985, 989; Caha v. United States, 152 U. S. 211, 221-222; Thornton v. United States, 271 U. S. 414, 420.)
These requirements of the regulations of the Civilian Production Administration must be read with our State Business Rent Law which expressly declares the existence of a public emergency. The act is declared to be a measure designed to protect public safety and inter alia to conserve “ essential materials.” As indicated, section 8, subdivision (c), of the Act, in addition to the landlord’s good faith, also expressly requires that “ the plans for such construction have been approved by the proper authorities, if such approval is required by law.”
The word “ plans ” in the statute must be construed with reference to the object sought to be attained by the Legislature in the enactment and that construction is to be preferred which furthers such object and purpose. (McKinney’s Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 96; Brustein v. New Amsterdam Casualty Co., 255 N. Y. 137, 141; Matter of Jannicky, 209 N. Y. 413, 418.) When we read the language of section 8, subdivision (c), with a consideration of the conditions the act was proposed to operate on, we reach the conclusion that the phrase “ plans for such construction ” includes construction projects. Linguistically one correct and approved definition of “ plan ” is “ project ” (Murray’s Oxford Dictionary Unabridged, 941). , Factually we think it is fair to say the Legislature intended that no matter how clear the landlord’s good faith, if he could not legally construct a proposed new building after demolishing the old, the exception made in section 8, subdivision (c), to the statute’s general blanket denial of dispossess proceedings was not applicable, i.e., under section 8, subdivision (c), there was to bo no dispossess for demolition unless the new construction project could lawfully be erected after demolition. The reason is inherent in the general aim of the whole act and the specific intent of the exception in question. If a landlord demolishes, and builds instead a new structure^ additional commercial space is thereby made available, emergency conditions are lessened and the purpose of the act achieved. But if a landlord demolishes and cannot rebuild because his plan or project is not legally approved by “ the *504 proper authorities ” whose approval “ is required by law ”, the result would be to increase the emergency conditions by diminishing existing business space without providing any in its place. That procedure would thwart the whole purpose of the act and we refuse to hold that the Legislature intended any such futile result.
The required submission of a “ plan ” in applications to the Civilian Production Administration is not, it should be conceded, for the purpose of having the plan approved as one that is structurally safe. Such approval is doubtless to be obtained from the local building department and has been secured. But the proposed new building here in contemplation is not a housing project of any kind. It is a new bank building to be used by a bank that already has a large number of branches in the Metropolitan area including one in the immediate vicinity of the proposed new site. Under applicable Federal regulations, the “ plan ” for such building, considered as a building construction project, must first be approved by the Federal agency before any construction whatever can commence. It should be noted that the statute uses the plural word “ authorities ” where approval by law is required. In the case at bar not only did the landlord fail to secure such approval but its application was specifically denied.
Defendants say they should not waste their time in further applications under “ moribund ” Federal regulations. We realize that the country is gradually working its way out of the numerous emergency controls and extraordinary executive powers of the war period. It may well be that Federal restrictions presently preventing construction such as here proposed, will be removed, but we are required to apply the law as it exists at the time the appeal is submitted and decided. Such Federal restrictions still apply to the type of construction here proposed.
It is no answer to say that under the act the landlord is liable in damages. Under section 8, subdivision (c), if the landlord fails to start ‘ ‘ demolition ” within ninety days after removing the tenants or if after commencing demolition he fails and neglects ‘ ‘ to prosecute the work with reasonable diligence, ’ ’ the landlord “ unless for good cause shown ” is liable to the tenant “ for all damage sustained on account of such removal.” This landlord clearly is acting in good faith and will begin demolition promptly. If it fails to prosecute the work it will be because it is still denied approval by the Civilian Production Administration, or such other Federal agency as may take over its functions. *505 Such failure to approve could be plausibly argued as “ good cause shown ” to exonerate the landlord from neglect in prosecuting the work and, if the contention was sustained, to deny damages to the dispossessed tenants.
For the reasons stated we hold that the landlord has not complied with all the statutory provisions and may not be awarded possession of the business space in question.
The judgment and final order appealed from should be reversed, with costs and disbursements to appellants and judgment directed to be entered in plaintiffs.’ favor declaring that the landlord-defendant has no legal right to dispossess plaintiffs and should be enjoined from doing so during the statutory period of the emergency and while approval of the construction project has not been obtained from the Civilian Production Administration, or such other Federal agency, if any, as may continue its function.
G-lennon and Cohn, JJ., concur; Martin, P. J., and Townley, J., dissent and vote to affirm.
Judgment and final order reversed, with costs to the appellants and judgment directed to be entered in plaintiffs’ favor declaring that the landlord-defendant has no legal right to dispossess plaintiffs and should be enjoined from doing so during the statutory period of the emergency and while approval of the construction project has not been obtained from the Civilian Production Administration, or such other Federal agency, if any, as may continue its function. Settle order on notice. [See 272 App. Div. 794.]